Argued and submitted March 5, reversed and remanded September 10, 1997

# STATE OF OREGON,
*Appellant,*

*v.*

# MARK DAVID SKEANS,
*Respondent.*

# (D9506864T; CA A94063)

945 P2d 529

Janet A. Klapstein, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Robert Thuemmel argued the cause for respondent. With him on the brief was Thuemmel & Uhle.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant was charged with driving while under the influence of intoxicants (DUII). ORS 813.010. Before trial, defendant challenged the lawfulness of the police officer's stop and subsequent DUII investigation, moving to suppress the results of his field sobriety tests (FSTs) and all evidence obtained thereafter. After an evidentiary hearing, the trial court entered an order suppressing the results of the FSTs.[1] The state appeals from the trial court's pretrial order. ORS 138.060(3). We reverse.

The facts, from the testimony of a civilian witness and the arresting officer, are undisputed. The civilian witness had observed defendant driving a Volvo erratically. She reported the driving to Officer Dickerson, who was parked on an overpass nearby. Dickerson then proceeded to try to locate defendant and came upon a Volvo parked along the road. The license plate number matched the one provided by the citizen. As he pulled in behind the Volvo, Dickerson saw defendant emerge from a wooded area, stagger, walk around the back of the Volvo to the driver's door and "clumsily" get into the driver's seat. At that point, Dickerson turned on his overhead lights, walked up to the Volvo and spoke with defendant.

As a result of his observations, Dickerson believed he had enough information to arrest defendant for DUII. Dickerson then asked defendant if he would be "willing" to take some FSTs, which prompted the following dialogue:

---

[1] Defendant filed a motion to suppress in which he challenged the stop on the ground that the police officer lacked probable cause. Defendant argued that all evidence derived from the stop should be suppressed as "fruits of the poisonous tree." However, at the conclusion of the evidentiary hearing defendant waived his challenge to the stop and proceeded on the basis that he did not consent to the FSTs, and, therefore, the results should be suppressed. Defendant also requested that statements that he made at the conclusion of the FSTs should likewise be suppressed because there was not a clear break between the conclusion of the FSTs and the eliciting of his incriminating statements.

The trial court suppressed the results of the FSTs but allowed the incriminating statements. Defendant does not challenge that portion of the court's order allowing the incriminating statements. Additionally, neither the state nor defendant has raised an issue regarding the admissibility of the testimonial aspects of any specific FST. Consequently, our analysis is limited to determining the admissibility of the results of the FSTs in general.

"Defendant:    Meaning, if I'm willing?

"Dickerson:    Would you like - I'm offering you, the chance to - to take field sobriety tests to help me determine whether or not you were safe to be driving down the road.

"Defendant:    Okay, and, and, if I'm willing, then what?

"Dickerson:    Basically, what I'll just have - I'll explain what I'm wanting you to do.

"Defendant:    I don't understand what you're talking about.

"Dickerson:    Okay, well the first thing I'd like you to do, I'd just like to look at your eyes."

Defendant immediately lifted his head so Dickerson could look into his eyes. Dickerson then requested four additional FSTs, all of which defendant performed. After the FSTs were completed, Dickerson informed defendant that he was under arrest for DUII.

The trial court granted defendant's motion to suppress the results of the FSTs because "defendant did not expressly or impliedly, by action or inaction, word or deed consent to take the [FSTs]" and "[t]here were *no exigent circumstances*." (Emphasis in original.) The state assigns error to the trial court's order suppressing the results of the FSTs.

■    The state first argues that "[a]n officer's decision to arrest an intoxicated driver does not negate the existence of exigent circumstances justifying 'seizure' of evidence gathered through [FSTs]." We agree. In *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994), the Supreme Court held that a police officer conducted a warrantless search within the meaning of Article I, section 9, of the Oregon Constitution when it "directed" the defendant to perform a series of FSTs. *Id.* at 31. Nevertheless, the court held that the search was reasonable because it was justified by probable cause and exigent circumstances. *Id.* at 33.

■    Although the probable cause plus exigent circumstances exception to the warrant requirement has two prongs, our analysis here is limited solely to determining the presence of exigent circumstances because defendant concedes the presence of sufficient probable cause. We are bound by the trial court's findings of historical facts if the evidence

supports them. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Our function is to decide whether the trial court applied legal principles correctly to those facts. *Id*.

■ Generally, the investigation of a DUII to obtain evidence of a person's blood-alcohol content is an exigent circumstance. *Nagel*, 320 Or at 33. However, in this case, the trial court concluded that "[t]here were no exigent circumstances" because "[t]he officer testified he had already decided to arrest defendant for DUII before defendant exited his car."

In *Nagel*, the Supreme Court held that "[a]n exigent circumstance is a situation that requires the police *to act swiftly* to prevent * * * the destruction of evidence." *Id*. at 33 (quoting *Stevens*, 311 Or 126) (emphasis supplied). The court limited application of this exception to a circumstance requiring a rapid police response. The court then applied this reasoning to the DUII investigation, holding that it was an exigent circumstance because "[b]lood-alcohol content is a transitory condition, the evidence of which will dissipate in a relatively short time." *Id*. at 33. Essentially, the court recognized that, in DUII investigations, timing is everything.

Here, the trial court's analysis was flawed because, as noted above, it is the temporal nature of blood-alcohol evidence that controls a determination of exigency, not the decision that an arrest is justified. A decision to arrest does not "freeze" a person's biological processes. Indeed, with the passing of each moment during the course of a DUII investigation, a person's blood alcohol content is changing. A decision to arrest has no effect on the "transitory nature" of this evidence and, likewise, no effect on the issue of exigency.

■ The results of FSTs are evidence that an officer is entitled to recover both before and after a decision to arrest, because the results are helpful to a determination of intoxication. *See State v. Fish*, 321 Or 48, 58, 893 P2d 1023 (1995) (FSTs are "physical and mental tasks designed to elicit responses that demonstrate whether the individual is under the influence of intoxicants."); *see also* ORS 801.272 (An FST is "a physical or mental test * * * that *enables a police officer or trier of fact* to screen for or detect probable impairment from intoxicating liquor[.]" (Emphasis supplied.)). Before

arrest, the results assist a police officer in making this determination; afterwards, they can aid the factfinder.

Defendant argues that "whether or not exigent circumstances exist during the [FST] portion of the 'investigation,' their existence does not add to the equation. The issue ultimately returns to consent." Defendant contends that, because some FSTs elicit testimonial responses, Dickerson could not lawfully administer any FST without defendant's consent. We disagree.

Consent is not required in all cases. *Nagel* establishes that a police officer, with probable cause and under exigent circumstances, can conduct a warrantless search through the administration of FSTs in general, regardless of consent. *Nagel*, 320 Or 24. However, *Fish* establishes that an officer cannot compel a person's specific performance of certain FSTs if such performance would elicit testimonial evidence. *See also State v. Nielsen*, 147 Or App 294, 936 P2d 374 (1997). However, the testimonial issue in *Fish* is distinct from the one before us because it involves a challenge to the administration and admissibility of individual tests on self-incrimination grounds. Defendant does not make that challenge here. In the absence of such a challenge, we have no occasion to consider the question of consent. Accordingly, the trial court erred in granting defendant's motion to suppress.

Reversed and remanded.