***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

Submitted February 28, reversed and remanded August 10, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANDRE RICHARD MARTIN,
*Defendant-Appellant.*

Josephine County Circuit Court
17CR51048; A173843

Pat Wolke, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Anna Belais, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction, following his conditional guilty plea, for driving under the influence of intoxicants (DUII), ORS 813.010(4). In a single assignment of error, he contends that the trial court erred in denying his motion to suppress evidence on two separate grounds. First, defendant argues that evidence of his refusal to perform field sobriety tests (FSTs) is inadmissible under *State v. Banks*, 364 Or 332, 434 P3d 361 (2019), and Article I, section 9, of the Oregon Constitution. Second, he asserts that evidence of a warrantless blood draw is inadmissible under *Missouri v. McNeely*, 569 US 141, 133 S Ct 1552, 185 L Ed 2d 696 (2013), and the Fourth Amendment to the United States Constitution. We agree with both arguments and reverse and remand.

We review the trial court's denial of defendant's motion to suppress for legal error. *State v. Portulano*, 320 Or App 335, 338, 514 P3d 93 (2022).

Late one night in July 2017, Trooper Ziegler with the Oregon State Police was on patrol in a rural part of Josephine County when he saw a car parked on the road's shoulder. After locating the driver, defendant, walking down the road, Ziegler stopped to talk to him. Suspecting that defendant had been driving under the influence of intoxicants, Ziegler asked him several times to perform field sobriety tests, but defendant repeatedly refused and was arrested for DUII. While en route to the Grants Pass Sobering Center, defendant told Ziegler that he would not agree to take a breath test once they arrived, so Ziegler diverted to the hospital and instructed a phlebotomist to collect a sample of defendant's blood to preserve evidence of his blood-alcohol content. Ziegler did not seek defendant's consent to administer the blood draw or consider seeking a warrant because the district attorney in Josephine County had instructed officers not to do so.

Defendant first argues that the trial court erred in denying his motion to suppress evidence that he refused to perform FSTs. Article I, section 9, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." An

officer's conduct in administering FSTs constitutes a search under Article I, section 9. *State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994). A person's refusal to consent to a warrantless search may not be admitted as evidence of the person's guilt in a criminal trial. *Banks*, 364 Or at 336, 342. In *Banks*, the Supreme Court extended that protection to a person's refusal to consent to a breath test, holding that, under Article I, section 9, administering a breath test constitutes a search that must be supported by a warrant or a legally valid exception to the warrant requirement. *Id.* at 337-39. The court rejected the state's argument that a person's refusal to consent to the breath test should nonetheless be admissible if the state can establish another lawful basis to conduct the warrantless search, including probable cause and exigent circumstances. *Id.* at 343-49. The court, setting forth a new test, explained that a breath-test refusal is admissible against a defendant in a DUII prosecution if the state "demonstrate[s] that the officer's question could reasonably be understood only as a request to provide physical cooperation and not as a request for constitutionally-significant consent to search." *Id.* at 343.

Here, defendant argues that *Banks* is equally applicable to refusals to perform FSTs. He further contends that, under *Banks*, the state failed to establish that his refusal to perform the FSTs did not constitute the invocation of his constitutional right to be free from a warrantless search, because Ziegler's multiple requests were ambiguous as to whether he was seeking defendant's physical cooperation to submit to the FSTs with no constitutional significance or sought consent to search with constitutional implications. The state concedes that, on the particular facts of this case, the record is insufficient under *Banks* to support a finding that defendant would have understood that he was not being asked for voluntary, constitutionally significant consent. Having reviewed the record, we agree with the parties for the same reasons. *See Banks*, 364 Or at 343 (concluding that the state did not meet its burden to establish the admissibility of the defendant's breath-test refusal where the officer's questioning was ambiguous as to whether he was seeking the defendant's consent or physical submission). We therefore accept the state's concession that the trial court erred in

denying defendant's motion to suppress defendant's refusal to consent to the FSTs and reverse and remand.

Defendant additionally argues that the trial court erred in denying his motion to suppress the warrantless blood draw because the state failed to establish the existence of an exigency as an exception to the warrant requirement under the Fourth Amendment and *McNeely*. The Fourth Amendment provides, in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *." US Const, Amend IV. "[A] warrantless search of the person is reasonable only if it falls within a recognized exception," including "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 569 US at 148-49 (internal quotation marks omitted). "[T]he state has the burden to show, under the specific facts and circumstances of the case, that the exigency exists." *Portulano*, 320 Or App at 352 (discussing *McNeely*).

*McNeely* resolved a split of authority on the issue of whether the natural dissipation of alcohol in the bloodstream constitutes a *per se* exigency justifying a warrantless, nonconsensual blood draw under the Fourth Amendment, holding that it does not. 569 US at 147, 151-53. Instead, the Court concluded that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.* at 156. The Court discussed several nonexclusive factors that are relevant to that determination, including: "(1) the availability of a magistrate; (2) the need for police to attend to and investigate a car accident; (3) technology that enables police to secure warrants quickly; (4) the procedures for obtaining a warrant; and (5) other practical problems that prevent law enforcement from obtaining a warrant within a timeframe that still preserves the evidence." *Portulano*, 320 Or App at 351 (citing *McNeely*, 569 US at 155-56, 164).

*McNeely* rejected the argument that "a warrantless blood draw is permissible if the officer could not secure a

warrant (or reasonably believed he could not secure a warrant) in the time it takes to transport the suspect to a hospital or similar facility and obtain medical assistance," noting that such an approach would be functionally equivalent to a "modified *per se* rule." *McNeely*, 569 US at 156-57. Rather, an officer's reasonable belief that obtaining a warrant will not be significantly faster than obtaining the suspect's blood is just one consideration under the totality of the circumstances. *Id.* at 157.

In *Portulano*, we recently addressed "the proper consideration of the availability and use of electronic warrant procedures—or lack thereof—in the calculation of exigency for warrantless DUII blood draws" under *McNeely* and the Fourth Amendment. *Portulano*, 320 Or App at 337. The DUII investigation in that case involved a high-speed chase at night in a rural part of Josephine County that ended when the defendant crashed, flipping his car upside down and trapping himself in the driver's seat. *Id.* at 338. At the hospital, one of the investigating troopers instructed a phlebotomist to perform a warrantless blood draw to preserve evidence of the defendant's blood-alcohol content. *Id.* at 339.

At the hearing on the defendant's motion to suppress the warrantless blood draw, the troopers involved in the incident provided extensive testimony. *Id.* at 340-43. The trial court denied the defendant's motion, concluding that the state had established a sufficient exigency under the Fourth Amendment. *Id.* at 343. In ruling, the court focused on the amount of time that had passed between the officers developing probable cause and when the warrantless blood draw was administered and that in October 2016, the night of the incident, Josephine County did not have any procedures in place to obtain electronic or telephonic warrants. *Id.* at 343-45.

Viewing the record in light of *McNeely*, we disagreed and reversed. We explained that, at the time of the incident, the troopers had the tools and infrastructure available to utilize a remote warrant process, judicial officers were available in Josephine County to issue warrants remotely, and the Oregon legislature has permitted the use of telephonic and electronic search warrants since 1973, ORS 133.545(7),

(8)(a). *Id.* at 357. We further concluded that, although the accident weighed in favor of an exigency, the accident was not dispositive because the state presented no evidence that "preparing a warrant application was incompatible with management of the accident scene." *Id.* at 357-58. We found "most critical[]" the evidence that the troopers "at the time of this stop were operating as if there was a *per se* exigency rule for warrantless blood draws, well after *McNeely* had established that there was not." *Id.* at 358.

> "The record is replete with testimony that the same [troopers], when operating in Jackson County, would apply for a warrant, but in Josephine County they would categorically forgo a warrant and rely solely on dissipation exigency to perform a warrantless blood draw. With over 40 years of combined experience in Josephine County, the three [troopers] testified that, while on patrol in Josephine County, none of them had *ever* applied for a search warrant to obtain a blood draw following a refusal. In accord with that practice, on the night of the arrest at issue here, despite the fact that numerous officers were on the scene and available, the [troopers] did not even discuss applying for a search warrant. In short, at the time of this stop, when it came to DUII investigations in Josephine County, rather than exigency arising in the regular course of business, *exigency was the regular course of business.*"

*Id.* at 358-59 (emphases in original).

We therefore concluded that, because "*McNeely* does not permit a functional *per se* exigency," the state had failed to satisfy its burden to establish an exigency that justified the warrantless blood draw under the Fourth Amendment. *Id.* at 338.

Here, following a hearing in which Ziegler testified, the trial court denied defendant's motion to suppress the warrantless blood draw. The court concluded that the state sufficiently established an exigency under *McNeely*,[1] finding that a reasonable officer in Ziegler's position could have concluded that seeking a warrant on the night of the incident would have created significant delay based on the

---

[1] The trial court did not have the benefit of *Portulano*, which issued after it ruled.

amount of time that had already passed since defendant's last drink and the complications in seeking a warrant at the time because Josephine County did not have procedures for obtaining either telephonic warrants or late-night electronic warrants. Considering the record in light of *McNeely* and *Portulano*, we conclude that the trial court erred.

First, Ziegler testified that, if he had attempted to seek a warrant, he would have had to contact the on-call district attorney to determine "how they [would] want to contact an on-call PC judge." Likewise, the trial court noted in its written order that Ziegler "did not know how he would have presented the warrant application to an on-call probable cause judge." That evidence permits the inference that Josephine County had on-call judges to issue search warrants in July 2017. However, the state failed to present evidence that one would not have been available to issue a warrant on the night of the incident. *See Portulano*, 320 Or App at 357 ("[W]e know from this record that judicial officers were available in Josephine County [in October of 2016] to issue warrants remotely. The state offered no testimony that they were unable to contact a judicial officer.").

Second, it is uncontested that the incident here did not involve a car accident or other emergency requiring Ziegler's attention so as to prevent him from seeking a warrant.

Third, the state failed to present evidence that Ziegler lacked the technology, such as an onboard computer or cell phone, that would have enabled him to secure a telephonic or electronic warrant quickly from his patrol vehicle. *See, e.g.*, *Portulano*, 320 Or App at 357 (the record showed that the troopers "had the tools and infrastructure available to them [in October 2016] to utilize the legislatively authorized remote warrant process," including police vehicles with "onboard computers, radios, and phones").

Fourth, although Josephine County did not have procedures in place to obtain telephonic warrants or late-night electronic warrants in July 2017, the state failed to provide evidence about the circumstances supporting the absence of those procedures. When the state asserts the existence of an exigency based on the lack of procedures

for obtaining telephonic or late-night electronic warrants, the state cannot meet its burden of proof to establish that exception to the warrant requirement under the Fourth Amendment without providing *any* evidence about the circumstances underlying the absence of those procedures. *See Portulano*, 320 Or App at 359 ("We do not foreclose the possibility that a record could establish that the resource constraints of a county prevented seeking a telephonic warrant, but such a record needs to be made in the first instance for us to say that the state has carried its burden.").

Fifth, other than the lack of procedures in place for obtaining late-night electronic or telephonic warrants in Josephine County, the state did not provide any evidence that other practical problems prevented Ziegler from obtaining a warrant within a timeframe that would ensure preservation of the blood-draw evidence.

Sixth, and most critically as in *Portulano*, Ziegler's decision to not seek a warrant before obtaining defendant's blood sample was based on a policy in Josephine County that effectively treated the dissipation of alcohol as a *per se* exigency. *See Portulano*, 320 Or App at 338 ("the totality of the circumstances includes the availability of electronic warrant procedures, the availability of judicial magistrates, and the purposeful choice by law enforcement countywide to decline to ever, under any circumstance, exercise that option"). Ziegler testified that he had been investigating DUIIs in Josephine County since 2015, but that he had never applied for either a telephonic warrant or blood-draw warrant in that county. The only search warrants he had ever applied for in Josephine County "had no exigency." However, he had sought telephonic warrants for blood draws in neighboring Jackson County and had sought warrants from on-call judges in Klamath County. Ziegler admitted that his decision to obtain the warrantless blood draw following defendant's breath-test refusal was not based on his own independent judgment but was due to the district attorney having instructed officers to not seek them and based on the "standard procedure" in Josephine County. As a result, Ziegler's decision to obtain the warrantless blood draw was based on a policy that treated the dissipation of alcohol as effectively a *per se* exigency and was not based

on an independent assessment of whether the specific circumstances beyond the dissipation of alcohol justified forgoing the warrant process, which is unconstitutional under *McNeely*. *See Portulano*, 320 Or App at 361 (Lagesen, C. J., concurring) ("the prevailing practice in Josephine County *** under which the dissipation of alcohol was treated as a *per se* exigency that permitted a warrantless blood draw in any drunk-driving case," is a "practice [that] is squarely unconstitutional under *McNeely*"); *id*. at 359 ("the officers in the field made no affirmative judgment about whether exigencies excused obtaining a warrant because they adhered to an unconstitutional practice of not seeking warrants for blood draws in drunk-driving cases"). Accordingly, the court erred in concluding otherwise.

In sum, the trial court erred in denying both defendant's motion to suppress his refusal to perform the FSTs under Article I, section 9, and defendant's motion to suppress the warrantless blood draw under the Fourth Amendment. Because defendant entered a conditional guilty plea, we reverse and remand without engaging in a harmless error analysis. *See State v. Lowell*, 275 Or App 365, 383, 364 P3d 34 (2015) (no harmless error analysis on appeal from conditional guilty plea).

Reversed and remanded.