Argued and submitted February 22, affirmed October 10, 1984

## STATE OF OREGON,
*Respondent,*

*v.*

## ALTA MAE GAINER,
*Appellant.*

(82-2075-K; CA A29805)

689 P2d 323

Thomas W. Swint, Grants Pass, argued the cause for appellant. With him on the brief was Douglas A. McKean, Grants Pass.

Roy Pulvers, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave

Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals her conviction for driving while under the influence of intoxicants, contending that the trial court erred in denying her pretrial motion to suppress certain statements made by her at the scene of the investigation and before she was advised of her *Miranda* rights. She also contends that former ORS 487.540(1)(a), making it unlawful for a person with a .10 percent blood-alcohol reading to drive, is unconstitutionally vague. We affirm.

On February 17, 1982, at approximately 2:05 a.m., defendant was driving northbound on Interstate 5 north of Grants Pass, when she was stopped by Officer Chambers. Chambers testified that he stopped defendant because she was driving very slowly and had crossed the fog line a couple of times. After approaching her car, the officer observed that defendant's breath smelled of alcohol, her eyes were dilated, her speech was slurred, and she could not recite the alphabet when asked to do so. At that point, he activated a tape recorder to proceed with his investigation, which included both the administering of field sobriety tests and inquiries concerning defendant's drinking.

In performing the field tests, defendant again performed poorly in reciting the alphabet; however, she walked a line without much difficulty, counted forward and backward without incident, and touched her fingers to her nose after one attempt failed. When asked about her level of education and why she was having trouble with her alphabet, defendant responded that she was a high school graduate, and that she always, even in school, got mixed up on the alphabet rhyme. The results of the sobriety tests did not persuade the officer that defendant was probably guilty of DUII, although it was apparent to him that she had been drinking. Accordingly, he asked her when she had started drinking. She responded, "[N]ot 'til about ten." He then asked her if she knew what time it was then. She did—about 2 a.m. Chambers then stated: "[W]ell, Alta, I think the alcohol is affecting you tonight." Defendant responded by stating, "[W]ith my alphabet, yes." At that point, the officer said he decided to arrest defendant and he advised her of her *Miranda* rights,[1] placed her under

---

[1] Although defense counsel elicited testimony from Chambers at trial that

arrest and took her to the Josephine County jail. At approximately 2:56 a.m., defendant took an intoxilizer test that showed a .13 percent blood-alcohol reading.

At the pretrial suppression hearing, the officer testified that once defendant's vehicle had been stopped, she was not free to leave, and that if she had attempted to do so before he had completed his investigation, he would have stopped her again for attempting to elude or for some similar offense. The stated purpose for the detention was the investigation of a possible DUII offense.

Defendant contends that both Article I, section 12, of the Oregon Constitution and the Fifth and Fourteenth Amendments to the federal constitution require suppression of all tape-recorded statements made during the course of the investigation. Her argument is that once the initial traffic stop took on the characteristics of a criminal investigation, which occurred when the officer activated the tape recorder, she was "in custody" and was entitled to be advised of her *Miranda* rights under the holding of *State v. Roberti,* 293 Or 236, 646 P2d 1341 (1982), *vacated and remanded,* 468 US ___, 104 S Ct 3574, 82 L Ed 2d 873 (1984). *Roberti,* however, was decided solely on federal constitutional grounds, and its analysis has been superseded by the United States Supreme Court's recent decision in *Berkemer v. McCarty,* 468 US ___, 104 S Ct 3138, 82 L Ed 2d 317 (1984); *see State v. Hackworth,* 69 Or App 358, 685 P2d 480 (1984).

In *McCarty,* the Supreme Court was asked to determine whether the roadside detention and questioning of a drunk driving suspect constituted custodial interrogation within the meaning of *Miranda.* Although the Court refused to except misdemeanor traffic offense investigations from the requirements of *Miranda,* it concluded that *Miranda* warnings need not be given incident to a stop, unless the suspect is "subjected to restraints comparable to those associated with a

---

arguably supports defendant's contention that she was questioned after the officer made the decision to arrest, but before she was advised of her rights, her assignment of error relates to the denial of her pretrial motion to suppress, not to other evidence adduced at the trial. The record does not reveal what questions might have been asked or what the answers were. Accordingly, we do not consider it in reviewing the court's denial of that motion. *See State v. Hackworth,* 69 Or App 358, 363 n 1, 685 P2d 480 (1984); *State v. Fields,* 51 Or App 125, 127, 624 P2d 655, *rev'd on other grounds,* 291 Or 872, 635 P2d 376 (1981).

formal arrest." 468 US at ___, 82 L Ed 2d at 336. In determining whether the suspect is in custody, as so defined, the Court stressed that the only relevant inquiry is how a reasonable person in the suspect's position would have understood his situation; a policeman's unarticulated intentions have no bearing on whether a suspect is in custody at a particular time. In applying that test, the court ruled that the defendant's detention by a single police officer, who asked a moderate number of questions and requested him to perform a single balancing test at a location visible to passing motorists, could not be characterized as the functional equivalent of a formal arrest.

Except for the fact that defendant was requested to participate in several field sobriety tests, the situation presented here is virtually indistinguishable from that presented in *McCarty*. Because the typical DUII traffic stop will require the investigating officer to administer a range of tests in order to determine whether to arrest a suspect, we cannot say that the performance of four or five tests renders the restraint comparable to that of a formal arrest if the performance of only one test would not. For that reason, we conclude that there was no federal constitutional violation in the trial court's refusal to suppress defendant's tape-recorded statements.

Defendant also contends that Article I, section 12, of the Oregon Constitution requires suppression of the tape-recorded statements, and urges us to adopt the standards set forth in *Roberti,* as governing the state constitutional challenge. We do not know what the Supreme Court will do with *Roberti* on remand. Because defendant does not argue for an Oregon constitutional rule other than the one finally adopted by the Oregon Supreme Court in *Roberti* under the federal constitution, we consider only whether that rule, if adopted, requires suppression here. We conclude that it does not. As recently as *State v. McConnville,* 67 Or App 601, 604, 679 P2d 1373 (1984), we interpreted *Roberti* as holding that the defendant was in custody for *Miranda* purposes when the officer had arrived at a decision, although uncommunicated to the motorist, to arrest him for driving while under the influence of intoxicants. Under that test, defendant was not in custody until after the officer had completed the field sobriety tests and she had responded to some questions. Thus, the only

statement that arguably is suppressible is defendant's unsolicited admission that the alcohol had affected her ability to recite the alphabet. Given the other evidence and defendant's intoxilizer test result of .13 blood alcohol, we conclude that the error, if any, in admitting that statement was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967).

■ In her second assignment, defendant contends that former ORS 487.540(1)(a) violates Article I, section 11, of the Oregon Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, because it is too vague to provide fair notice of the conduct proscribed. That statute provided:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .10 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath, blood or urine of the person made under ORS 487.805 to 487.815 and 487.825 to 487.835 * * *."[2]

There is nothing vague about the statute; it is very precise in stating what conduct is unlawful. It also provides a definite standard by which a court or jury may determine guilt. *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982); *State v. Hodges,* 254 Or 21, 457 P2d 491 (1969). Defendant does not contend that the test is or should be different under the Oregon Constitution; in fact, *State v. Hodges, supra,* indicates that it is not. Defendant contends that the vagueness consists of the inability of a driver to know at any given moment whether his blood-alcohol content has reached a level of .10. That may be true, but the statute does not require that the driver know that fact. One who drives after drinking intoxicating liquor takes the chance that his blood-alcohol level violates the statute. We reject defendant's constitutional challenge.

We have considered defendant's other assignment and conclude it is without merit.

Affirmed.

---

[2] ORS 487.540(1)(a) was amended by Or Laws 1983, ch 722, § 1, to change the prohibited blood-alcohol level from .10 to .08.