Argued and submitted March 3, reversed and remanded with instructions
November 4, 1998

In the Matter of the Suspension of
the Driving Privileges of

Kenneth E. BROWN,
*Respondent,*

*v.*

MOTOR VEHICLES DIVISION,
*Appellant.*

(9603-02371; CA A94340)

967 P2d 919

Michael C. Livingston, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

James D. Huffman argued the cause for respondent. With him on the brief was Olsen, Huffman & Horn.

Before Riggs, Presiding Judge pro tempore, and De Muniz and Landau, Judges.

RIGGS, P. J. pro tempore.

**RIGGS, P. J. pro tempore.**

In this implied consent case, Motor Vehicles Division (MVD) appeals a circuit court judgment reversing its order suspending petitioner's driving privileges for refusing to take a breath test following his arrest for Driving Under the Influence of Intoxicants (DUII). ORS 813.410. The circuit court reversed MVD's order on the ground that the arresting officer lacked probable cause to arrest petitioner. We reverse and remand with instructions to reinstate the order of suspension.

We summarize the facts consistent with the findings in the MVD order. At 2:30 in the morning of January 28, 1996, State Police Officer Lisa Boe was on patrol, driving eastbound in the area of Southeast Division and 122nd streets in Portland when she passed a car, driven by petitioner, heading west on Division with its lights off. Boe turned and followed the car for several blocks, during which time the car's lights remained off. Boe activated the overhead lights in her patrol car and signaled petitioner to pull over. Petitioner pulled to the side of the road "quite quickly and abruptly" and stopped.

Boe left her patrol car and walked to the driver's side window of petitioner's car, which was rolled down two inches. The officer asked petitioner to open the window further, which he did, informed him that she had pulled him over for driving with his headlights off, and asked for his license, registration and proof of insurance. After petitioner rolled his window down, Boe noticed a strong odor of alcohol coming from the car. She observed also that petitioner's eyes were bloodshot and that his finger dexterity appeared poor as he searched for his registration and proof of insurance in the center console of his car.

Boe took petitioner's license and registration and returned to her patrol car, where she made a radio call for a warrant and MVD status check. That check revealed nothing unusual, and Boe activated her video camera and returned to petitioner's car. The officer testified:

"At that time I advised him I could smell an odor of alcohol from his vehicle and asked if he'd had anything to drink that night. He said he'd had a couple. I then advised him

our conversation was being recorded and asked him if he'd mind performing a few field sobriety tests to make sure he was safe to be driving. And at that time he stated 'Well, I'm only going home.' I again asked him—that I wanted to make sure he was safe to be driving to go home, and he stated 'well, I'll take a cab if you want.' At that time I again advised him I'd like him to perform some tests, and he stated, 'Nuts, no.' I asked him if—what he meant by that and he stated 'What do you want me to do?' I then asked him if he wanted to do the tests, and at that time he agreed."

Boe administered the Horizontal Gaze Nystagmus test and began the walk-and-turn test by instructing petitioner to stand with his feet aligned heel to toe in a straight line. Petitioner attempted to stand in that position but wavered and nearly fell, at which point Boe ended the walk-and-turn test. Petitioner then said, "I don't want to do any more tests," and began to walk to his car. Boe arrested him for DUII.

The officer then drove petitioner to a nearby State Police office, arriving at 2:53 a.m., read him the MVD Implied Rights and Consequences form, ORS 813.130, and asked him if he would take a breath test. Petitioner replied, "No, not without my lawyer." Boe then provided him with telephone books, but petitioner stated that his lawyer had an unlisted telephone number. The officer again asked petitioner if he would take a breath test, and petitioner again replied that he would not without his lawyer. Boe then assisted petitioner in calling information, and petitioner made two additional telephone calls, ending at 3:25 a.m. Boe testified:

"I asked him if he was finished, and he stated he was. I asked him if his decision was the same, and he stated, 'Same decision.' At that time I initiated the Intoxilyzer and [initialed] it to indicate a refusal. After that I gave him his paperwork including the DMV copies."

MVD suspended petitioner's driving privileges for one year for refusing to take the breath test. ORS 813.410; ORS 813.420. Petitioner requested a hearing on the suspension before an MVD administrative law judge (ALJ). After the hearing, the ALJ issued an order affirming the suspension and holding that Boe had probable cause to arrest defendant for DUII before she asked him to perform field sobriety tests.

Petitioner appealed the order to circuit court under ORS 813.450(1). The court vacated the order on the ground that Boe did not have subjective probable cause to arrest petitioner before she administered the field sobriety tests.[1] In so ruling, the court focused on Boe's testimony on cross-examination during the MVD hearing. Petitioner's counsel questioned Boe at length about the timing of her decision to arrest petitioner. The officer testified that she "felt [petitioner] was under the influence of intoxicants" before she asked him to do field sobriety tests and stated: "Based on my contact with him, of everything I observed in this contact, I had felt in my mind that this individual is going to refuse to do tests, that I had probable cause to arrest him." In response to other questions, Boe stated that she did not actually decide to arrest petitioner until he walked away from her following the field sobriety tests, but repeated that she had formed the subjective opinion that he was under the influence prior to the tests and had performed the tests to give him "an opportunity to show me that what I had observed was not due to alcohol."

In vacating the MVD order, the court stated that

"the officer's testimony was unclear as to when she decided she would arrest petitioner. At one point she indicated she would arrest him just because he refused the test; however, she did not arrest him, and proceeded to do the HGN test.

" 'Q: And when you asked him to do those tests you * * * did you consider the HGN as one of your field sobriety tests?

" 'A: Yes.

" 'Q: So before the test you hadn't decided to arrest him?

" 'A: No. He was not under arrest, no.'

"Later at page 64 she seems to change her mind. I must resolve this inconsistency against respondent. * * * I am finding that petitioner must prevail and the order of suspension must be vacated." (Internal citations omitted.)

---

[1] Probable cause has both an objective and a subjective component: "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986).

Although this is an appeal from a judgment of the circuit court, we review MVD's order for substantial evidence and errors of law. ORS 813.450(4); *Oviedo v. MVD*, 102 Or App 110, 113, 792 P2d 1244 (1990). The ALJ's determination that the officer had subjective probable cause to arrest petitioner before the field sobriety tests is a finding of historical fact, which binds us so long as it is supported by substantial evidence in the record. *State v. Nagel*, 320 Or 24, 32, 880 P2d 451 (1994).

■ MVD urges that the circuit court erred in vacating its order because the ALJ's finding that Boe had subjective probable cause is supported by substantial evidence in the record. We agree. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c); *Winroth v. DMV*, 140 Or App 622, 626, 915 P2d 991 (1996). The inconsistency in the officer's testimony perceived by the circuit court does not require the issue to be resolved against MVD; the question is whether substantial evidence supports the finding of subjective probable cause despite the alleged inconsistency. Here, Boe stated more than 10 times at the MVD hearing that she would have arrested petitioner if he had refused to perform the field sobriety tests, because she believed, based on their initial contact, that he was driving under the influence of alcohol. That testimony was more than sufficient to permit a reasonable person to find that Boe believed petitioner was under the influence of alcohol before requesting the field sobriety tests. Accordingly, the ALJ's finding that Boe had subjective probable cause was supported by substantial evidence, and the circuit court erred in rejecting that finding.[2]

---

[2] Petitioner does not argue that Boe lacked *objective* probable cause to arrest petitioner before administering the field sobriety tests. Nor would such an argument be successful, as Boe clearly had objective probable cause based on petitioner's driving at 2:30 in the morning without lights, the odor of alcohol from the car, petitioner's bloodshot eyes, poor finger dexterity, and his admission that he had been drinking. *See, e.g., Winroth v. DMV*, 140 Or App 622, 627 n 1, 915 P2d 991 (1996) (objective probable cause present where officer saw driver speeding and crossing center line of road, officer smelled moderate odor of alcohol from driver, and driver had bloodshot eyes and poor dexterity and admitted to drinking).

Petitioner urges, and the circuit court found, that this case is controlled by our recent decision in *Winroth*. However, *Winroth* is distinguishable. In that case, the officer "testified consistently and repeatedly that he was not sure that he had probable cause until *after* petitioner had performed the tests." *Winroth*, 140 Or App at 628. We concluded, based on that testimony, that the hearings officer's finding that the arresting officer had subjective probable cause before administering field sobriety tests was not supported by substantial evidence. *Id.* at 629. Here, as noted above, the testimony is markedly different and provides evidentiary support for the ALJ's finding. *Winroth* is not to the contrary.

In sum, the circuit court erred in ruling that Boe lacked subjective probable cause to arrest petitioner and in vacating MVD's order on that ground. Nevertheless, petitioner argues that the *vacatur* was proper for a number of other reasons and suggests several grounds on which we may affirm the circuit court.

First, petitioner suggests several reasons why his consent to perform field sobriety tests was invalid and argues that we must suppress the results of those tests. Those arguments are easily answered. The ALJ properly found that Boe had probable cause to arrest defendant before she administered the tests: in other words, the arrest was justified regardless of the results of the tests, and suppression of those results would not require us to vacate the MVD order. Further, suppression of the results of the tests would have no practical effect outside the context of the order, because there is no pending trial or hearing in this matter. Accordingly, there would be no benefit to our addressing petitioner's arguments concerning the field sobriety tests, and we decline to do so.

Second, petitioner contends that Boe impermissibly expanded the initial traffic stop by asking petitioner to open his window more than two inches, by requesting his vehicle registration and proof of insurance, and by recording much of the encounter. That expansion, he argues, requires us to suppress all evidence obtained from the stop under ORS 810.410. *State v. Dominguez-Martinez*, 321 Or 206, 214, 895 P2d 306

(1995) (evidence obtained following improper expansion of traffic stop suppressed).

■ We reject petitioner's claims that Boe improperly expanded the traffic stop. First, the issue of the recording was not argued before the ALJ and, accordingly, is not preserved. *Warner v. MVD*, 126 Or App 164, 168-69, 868 P2d 6 (1994) (petitioner may not raise on appeal issue not raised at MVD hearing).

■ Second, Boe's request that defendant open his window was not an expansion of the initial stop of the sort that might lead to suppression under ORS 810.410 or *Dominguez-Martinez*. ORS 810.410(3)(b) allows officers to "stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation." We have no difficulty concluding that Boe's request to open the window was reasonably related to identification and issuance of the citation, at least. We do not read ORS 810.410 or *Dominguez-Martinez* to suggest that a lone police officer approaching a traffic offender at 2:30 in the morning must conduct her inquiries through a two-inch crack in a car window.

■ Finally, the officer's request for registration and proof of insurance was not an improper expansion of the stop. In *State v. Black*, 146 Or App 1, 932 P2d 554, *rev den* 325 Or 247 (1997), an officer stopped the defendant on suspicion of illegal dumping, requested the same documents that Boe requested in this case, and made observations during the defendant's search for those documents that led him to arrest defendant for DUII. We held that the request was not an improper expansion of the stop, stating:

> "Likewise, request of documentation of registration was related to proof of ownership of the van and was reasonably related to the investigation. Although requesting proof of insurance may not be directly related to illegal dumping, its inclusion in the requests for other documentation is related to the general investigation into identification of defendant and ownership of the van thought to be involved in the crime." *Id.* at 5.

Consistent with *Black*, we find that Boe's request for registration and proof of insurance was reasonably related to the

purpose of the traffic stop in this case and was not an impermissible expansion of the stop under ORS 810.410.

■ ■ Next, petitioner argues that he did not actually refuse to take the breath test. In his view, his statement "No, not without my lawyer" was not a refusal but a conditional acceptance of Boe's request that he take the breath test. Thus, according to petitioner, when Boe later asked him if his decision was the same, and he said, "Same decision," he was actually confirming an earlier acceptance of the breath test, not a refusal. That argument is unpersuasive. Refusal to take a breath test "need not be explicit," and "[t]he word 'refusal,' as used in the Implied Consent Act, means non-submission." *Moore v. Motor Vehicles Division*, 293 Or 715, 722, 652 P2d 794 (1982). While a "request to call a lawyer * * * is not in itself a refusal," *id.* at 723, both the Supreme Court and this court have found conditional responses like petitioner's to be refusals. *See id.* at 725-26 ("Not without the advice of my attorney."); *Ahlbin v. MVD*, 113 Or App 441, 444, 833 P2d 1291 (1992) ("No, I want a blood test, not a breath test. I want an attorney."); *Schrier v. MVD*, 99 Or App 209, 210, 781 P2d 1226 (1989) ("No, not without the advice of an attorney."). Under those cases, petitioner's responses to Boe's requests that he take a breath test were refusals, and his argument to the contrary is unavailing.

Petitioner suggests two additional grounds for affirming the circuit court's decision to vacate the order: ALJ bias and Boe's alleged failure to articulate an objective basis for the initial traffic stop. We have carefully considered petitioner's arguments on those issues and reject them without discussion.

Reversed and remanded with instructions to reinstate the order of suspension.