Argued and submitted December 22, 1998, reversed and remanded May 12,
petition for review denied October 26, 1999 (329 Or 447)

## STATE OF OREGON,
*Respondent,*

*v.*

## KYLE VERNON RUTHERFORD,
*Appellant.*

(93-7038; CA A100453)

981 P2d 386

James N. Varner argued the cause for appellant. With
him on the brief was David Groom, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued
the cause for respondent. With her on the brief were Hardy

Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judges.

ARMSTRONG, J.

---

* Deits, C. J., *vice* Warren, P. J., retired.

**ARMSTRONG, J.**

Defendant appeals his conviction for driving under the influence of intoxicants (DUII) and assigns error to the trial court's denial of his motion to suppress the results of field sobriety tests and all evidence derived from them. Defendant argues that the officer who administered the tests did not determine that he had probable cause to arrest defendant for DUII before administering the tests and, as a consequence, that he lacked authority to administer them. We agree and reverse.

The trial court found the following facts. Oregon State Police Trooper Dyer was on duty patrolling the Astoria-Megler bridge early in the morning of January 26, 1993. There was a large fire on the Astoria waterfront and visibility on the bridge was low. Dyer saw defendant's vehicle approaching from behind at a high rate of speed. Dyer accelerated to avoid being rear-ended by defendant and saw defendant lock his brakes and fishtail as he tried to stop behind him. Believing that defendant was driving too fast for the existing conditions and that defendant was driving carelessly, Dyer continued down to the bridge tollbooth area, where he stopped defendant.

On contacting defendant, Dyer noticed a strong odor of alcohol coming from him and saw that his eyes were glassy and bloodshot and that he swayed in his seat. Dyer decided that he wanted to do a DUII investigation and had defendant pull his car over into an adjacent parking lot. There, Dyer had defendant step out of his car and gave him statutory instructions about field sobriety tests and a *Miranda* warning. After defendant had performed seven field sobriety tests, Dyer arrested him for DUII.

At the suppression hearing, the following colloquy occurred between the district attorney and Dyer:

Q: "Based upon your training and your experience and based on the totality of circumstances did you come to a conclusion at any point that it was more likely than not that the defendant had been driving under the influence of intoxicants?"

A:  "Yes I did."

Q:  "When did you come to that conclusion?"

A:  "After I had concluded my field sobriety tests and prior to [giving] the *Miranda* warnings the second time."

Q:  "Did you arrest him at that point?"

A:  "Yes I did."

Following a stipulated facts trial, the court found defendant guilty.

Defendant argues that Dyer's testimony establishes that Dyer did not determine that he had probable cause to arrest defendant for DUII until after he had conducted the field sobriety tests of defendant. If defendant's interpretation of Dyer's testimony is correct, all evidence derived from those tests would be inadmissible. *Winroth v. DMV*, 140 Or App 622, 915 P2d 991 (1996).

Not until *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994), did the Supreme Court establish that field sobriety tests constitute a search within the meaning of Article I, section 9, of the Oregon Constitution. Consequently, an officer must have either a search warrant to conduct the tests or the authority to conduct them must come within one of the recognized exceptions to the warrant requirement. One exception to the warrant requirement is a search conducted with probable cause and under exigent circumstances. That is the exception on which the state relies to uphold the tests in this case. Under that exception, an officer must have probable cause to believe that a person is driving under the influence of intoxicants before administering field sobriety tests to that person. *Winroth*, 140 Or App at 625. Probable cause has both an objective and a subjective component.

> "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances."

*State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). Defendant does not contend that Dyer lacked an objective basis to believe that defendant had driven while under the influence of intoxicants before Dyer administered the field sobriety

tests. His challenge, rather, implicates the subjective component of probable cause.

As we said in *Winroth*, "[a]n officer must have probable cause to believe that an individual is driving under the influence of intoxicants *before* the officer administers field sobriety tests to the individual." 140 Or App at 625. "[A]n officer cannot request field sobriety tests unless he *personally believes* at that time that he has probable cause to arrest the driver for DUII, regardless of whether a court in hindsight finds that probable cause was present." *Id.* at 631 (De Muniz, J., concurring).

■ At the suppression hearing, when Dyer was presented with the statutory definition of probable cause and asked when he had developed his belief that he had probable cause to arrest defendant for DUII, he stated that he did so *after* administering the field sobriety tests. That statement, and the sequence it describes, is entirely consistent with the regime that governed DUII stops before *Nagel*. Before *Nagel*, officers did not need to have probable cause to administer field sobriety tests; a reasonable suspicion that the person had driven while under the influence of intoxicants was enough.

The state argues that Dyer's choice to administer the tests is sufficient to permit the trial court to infer that Dyer believed that he had probable cause to arrest defendant before administering the tests. The state made a similar argument in *State v. Bickford*, 157 Or App 386, 390 n 1, 970 P2d 234 (1998), arguing that an officer's decision to make an arrest is conduct from which a court can infer the existence of subjective probable cause. We rejected that proposition in *Bickford*, explaining that "[i]f a trial court could infer subjective probable cause *from* the arrest, we would never need to inquire into subjective probable cause *for* the arrest." *Id.* The same is true with the state's argument here. If we were to accept its argument that Dyer's decision to administer the tests alone provides sufficient evidence to infer subjective probable cause, we would never need to inquire further.

Nevertheless, as the state correctly notes, *State v. Belt*, 325 Or 6, 13, 932 P2d 1177 (1997), holds that an officer's conduct can, in some circumstances, support an inference

that subjective probable cause existed. However, that inference cannot be drawn here. First, leaving aside Dyer's direct testimony on the point, the Oregon Constitution had not been interpreted at the time of this search to require an officer to have probable cause to conduct it. Before *Nagel*, officers were understood to have authority to conduct field sobriety tests if they had a reasonable suspicion that the defendant had driven while under the influence of intoxicants. *See State v. Niles*, 74 Or App 383, 386-87, 703 P2d 1030 (1985). Hence, there was no reason for Dyer to believe that he needed probable cause to conduct the tests, and, given the state of the law, no room to infer that he had formed that belief before conducting them. Second, *Belt* also held that the inference can be drawn only when "no evidence provides a contrary explanation of th[e] conduct[.]" *Id.* at 12. The inference cannot be drawn here in the face of Dyer's testimony that he had formed the required belief about the existence of probable cause only *after* administering the field sobriety tests.

■ ·The state argues, nonetheless, that we are bound by the trial court's finding that Dyer held the requisite belief before administering the tests. The state relies on our decision in *State v. Demus*, 141 Or App 509, 513, 919 P2d 1182 (1996), where we said that a court's finding on an officer's belief about the existence of probable cause is a factual finding, which is binding on us if it is supported by evidence in the record.

The state's reliance is misplaced. Whether evidence is sufficient to support an inference is a legal issue, not a factual one. *Belt*, 325 Or at 12. Thus, we are not bound by the trial court's conclusion on it. *State v. Jacobus*, 318 Or 234, 240, 864 P2d 861 (1993). The trial court's conclusion that Dyer's conduct was sufficient to support an inference about the existence of subjective probable cause is incorrect. The stop in this case occurred before *Nagel*. Hence, Dyer stopped and administered the tests to defendant at a time when he did not know that he needed probable cause to do that. Even ignoring Dyer's direct testimony on the point, the trial court could not infer on this record that Dyer believed that he had probable cause to conduct the field sobriety tests.

Because the field sobriety tests were conducted without probable cause, the evidence obtained as a result of them should have been suppressed.

Reversed and remanded.